Andrew H. FOWLER, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civil Action No. 2000–270(RMU).

United States District Court,
District of Columbia.

Nov. 20, 2000.

Jeffrey Marshall Ford, College Park, MD, for Plaintiff.

William Johnson Earl, Jr., Andrew W. Racca, Office of Corp. Counsel, Washington, DC, for Defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

**Denying the Defendants' Renewed Motion to Dismiss**

## I. INTRODUCTION

This matter comes before the court upon the defendants' renewed motion to dismiss. On February 11, 2000, Andrew Fowler initiated this employment discrimination suit, alleging that the defendants retaliated against him by unlawfully discharging him from his teaching position at Roosevelt Senior High School in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The defendants are Learie Phillip, Principal of Roosevelt Senior High School, and the District of Columbia, through Arlene Ackerman in her official capacity as Superintendent of the District of Columbia Public Schools ("DCPS").

In a Memorandum Opinion and Order dated July 26, 2000 ("Mem.Op."), this court granted in part and denied in part the defendants' motion to dismiss or, in the alternative, for summary judgment.

Thereafter, on August 7, 2000, Mr. Fowler amended his complaint to allege a violation of the District of Columbia Human Rights Act, D.C.Code § 1–2501 *et seq.* ("DCHRA"). The defendants responded with the instant motion, in which they now urge the court to dismiss the plaintiff's DCHRA claim on the ground that he failed to exhaust his administrative remedies. For the reasons stated herein, the court will deny the defendants' renewed motion to dismiss.

## II. BACKGROUND [1]

Andrew Fowler has worked for the D.C. Public School System for twenty-five years. In 1982, Mr. Fowler began his tenure as a full-time English teacher at Theodore Roosevelt Senior High School. In addition to his primary teaching responsibilities, Mr. Fowler served as chairman of the English Department and coach of the boys' basketball team. Mr. Fowler was, it seems, a veteran member of the Roosevelt faculty when Mr. Learie Phillip assumed the post of principal of Roosevelt High in September 1995.

According to Mr. Fowler, almost immediately after arriving at Roosevelt, Mr. Philip began sexually harassing female faculty members. In late September 1995, Mr. Fowler complained to Mr. Phillip and his superiors, and to then-DCPS Superintendent Franklin K. Smith, that Mr. Phillip was sexually harassing female members of the faculty. In response to Mr. Fowler's accusations, Mr. Phillip allegedly "embarked on a campaign to destroy plaintiff's professional reputation and standing in the Roosevelt community." *See* Am. Compl. ¶ 12. For example, after Mr. Fowler reported the alleged sexual harassment, he received his lowest performance evaluation ever during his tenure with DCPS. *See*

Pl.'s Statement of Material Facts as to which There is a Genuine Dispute ¶ 4.

As Roosevelt High became immersed in an eddy of accusations and reprisals, the District of Columbia was struggling with a crisis of its own. Operating deficits, cash shortages, management inefficiencies, deficit spending, and an overall "fiscal emergency" led Congress to enact the D.C. Financial Responsibility and Management Assistance Act of 1995, Pub.L. No. 104–8, 109 Stat. 97 (1995), and the D.C. Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). By this legislation, Congress authorized the District to implement an emergency reduction in force ("RIF"). Prior to 1996, the District's RIF regulations had operated on the basis of seniority. *See* D.C.Code § 1–625.1 (1992 Repl.). The effect of the new RIF regulations was to allow the Superintendent of Schools to designate each school as a separate "competitive area," so that teachers at one school would compete for available positions only with other teachers in that school, rather than on a city-wide basis. *See* D.C.Code § 1–625.1 (1996).

As a result of the new RIF regulations, the Roosevelt English Department learned that in May 1996 it would have to reduce its staff by two. *See* Mot. to Dis., Ex. 3 at 8 (Office of Employee Appeals Initiation Decision). To effectuate the reduction, the RIF required DCPS principals to fill out "competitive level documentation form[s]" ("CLDF"), by which they would rank teachers in the soon-to-be-eliminated positions. *See* D.C. Mun. Regs. Tit. 5, §§ 1500, 1503. Mr. Phillip devised the method that Roosevelt High would use to calculate the CLDF. The CDLF determination placed Mr. Fowler seventh out of eight English teachers at Roosevelt High. *See* Mot. to Dis., Ex. 3 at 4. In June 1996, Mr. Fowler received notice that he would

1. When deciding a motion to dismiss, the court must presume the allegations of the complaint to be true and construe them liberally in the plaintiff's favor. *See Shear v. National Rifle Ass'n,* 606 F.2d 1251, 1253 (D.C.Cir.1979). Accordingly, the court derives all background information from the plaintiff's amended complaint, except where otherwise indicated.

be terminated within thirty days.[2] *See id.*

At length, Mr. Fowler filed a complaint in this court, alleging that his termination was the result of illegal retaliation in violation of Title VII. Specifically, Mr. Fowler alleges that Mr. Phillip retaliated against him with "poor performance evaluations, denial of [Mr. Fowler's] applications to coach interscholastic sports, notification that [Mr. Fowler] was to be transferred to another school, and ultimately, … [his] inclusion in a DCPS system-wide reduction-in-force." *See* Compl. ¶ 12. Indeed, with respect to this latter charge, Mr. Fowler alleges that Mr. Phillip manipulated the implementation of the RIF in a manner that guaranteed Mr. Fowler's removal. *See id.* ¶ 13.

On April 7, 2000, the defendants filed a motion to dismiss, or in the alternative, for summary judgment. The defendants asserted three grounds for dismissal: (1) the plaintiff could not recover punitive damages against a government agency under Title VII; (2) the plaintiff did not follow the proper procedures and did not exhaust administrative remedies in challenging his dismissal under the RIF regulations; and (3) the plaintiff failed to exhaust his administrative remedies under the DCHRA.

By Memorandum Opinion and Order dated July 26, 2000, the court granted in part and denied in part the defendants' motion to dismiss. Specifically, the court agreed with the defendants that Title VII does not permit the plaintiff to recover punitive damages from the District of Columbia or its agents. By contrast, the court rejected the defendants' claim that the plaintiff did not follow the appropriate procedures or exhaust his administrative remedies in challenging his RIF dismissal. Finally, and most relevant for the purposes of the present motion, the court denied without prejudice the defendants' motion to dismiss all causes of action under the DCHRA. In so holding, the court

noted that although the plaintiff premised jurisdiction on both Title VII and the DCHRA, his one-count complaint alleged violation only of Title VII. *See* Mem. Op. at 6 n. 2. The court indicated, however, that if the plaintiff amended his complaint to allege violation of the DCHRA, the defendants would be permitted to renew their DCHRA-based exhaustion arguments. *See* Mem. Op. at 6.

On August 7, 2000, the plaintiff amended his complaint to allege violation of the DCHRA. On August 30, 2000, the defendants filed the instant motion, renewing their request for dismissal of the DCHRA claim on the ground that the plaintiff failed to exhaust his administrative remedies. The defendants argue that by failing to exhaust his administrative remedies, the plaintiff has deprived this court of subject-matter jurisdiction, *see* Fed.R.Civ.P. 12(b)(1), and that the plaintiff has failed to state a claim upon which relief can be granted, *see* Fed.R.Civ.P. 12(b)(6).

## III. LEGAL STANDARD

The defendants seek dismissal of the plaintiff's DCHRA claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. It is well settled that unless a plaintiff complies with the exhaustion requirements of section 706(c) of Title VII, federal courts lack subject-matter jurisdiction over the plaintiff's claim. *See, e.g., Davis v. North Carolina Dep't of Correction,* 48 F.3d 134, 136–37 (4th Cir.1995). The defendant thus has properly raised the exhaustion issue in a motion to dismiss pursuant to Rule 12(b)(1). Accordingly, the court will treat the defendant's motion under the rubric of Rule 12(b)(1) and not under Rule 12(b)(6).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *See District of Columbia Retirement Bd. v. United States,* 657 F.Supp.

---

2. In December 1997, the DCPS rehired Mr. Fowler as a teacher at Sharpe Health School.

*See* Mot. to Dis., Ex. 5.

428, 431 (D.D.C.1987). Because subject-matter jurisdiction deals with the power of the court to hear the plaintiff=s claim in the first place, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *See* 5A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV.2D, § 1350. For this reason, the "[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion" than on a 12(b)(6) motion for failure to state a claim. *See id.* In addition, the court need not limit itself to the allegations of the complaint. *See Hohri v. United States*, 782 F.2d 227, 241 (D.C.Cir.1986), *vacated o.g.*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987). Rather, "[t]he court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Scolaro v. D.C. Board of Elections and Ethics*, 104 F.Supp.2d 18, 22 (D.D.C.2000) (citing *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C.Cir.1992); *see also Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987)).

## IV. DISCUSSION

### A. The DCHRA Requires D.C. Government Employees to Exhaust Administrative Remedies

■ The defendants' sole argument is that the plaintiff failed to exhaust his administrative remedies under the DCHRA. While the DCHRA generally does not require exhaustion of administrative remedies, there is a statutory exhaustion requirement for employees of the District of Columbia government. *See Hunt v. D.C. Dep't of Corrections*, 41 F.Supp.2d 31, 37 (D.D.C.1999). Government employees

must first exhaust their administrative remedies under D.C.Code § 1–2543 before filing suit for alleged violations of the DCHRA.[3] *See id.* (citing *Newman v. District of Columbia*, 518 A.2d 698, 700 (D.C. 1986)). As a DCPS employee, Mr. Fowler qualifies as a government employee for the purposes of the DCHRA. Therefore, D.C. law would require Mr. Fowler to exhaust his administrative remedies before filing a lawsuit alleging a violation of the DCHRA. *See* D.C.Code § 1–2543.

Although Mr. Fowler filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), he did not utilize local procedures set forth in the D.C. Municipal Regulations for the filing of discrimination complaints by D.C. government employees. *See* D.C. Mun. Regs. § 4–101 *et seq.* Indeed, as the defendants correctly assert, there is no evidence that the plaintiff proceeded before any agency other than the EEOC before filing his complaint with this court. *See* Renewed Mot. to Dis. at 4. The plaintiff does not dispute this assertion. Rather, he claims that the existence of a worksharing agreement between the D.C. Office of Human Rights ("OHR") and the EEOC obviates the need for exhaustion under the DCHRA. *See* Pl.'s Opp'n to Defs.' Renewed Mot. to Dis. ("Opp'n"); *see also* Worksharing Agreement Between the DC OHR and the EEOC Washington Field Office for Fiscal Year 2000 ("D.C. Worksharing Agreement").[4]

### 1. The Worksharing Agreement Relieves the Plaintiff of the Need to File with Both the EEOC and the OHR

In its Memorandum Opinion of July 26, 2000, the court discussed the doctrine of

---

3. D.C.Code § 1–2543 (Establishment of Procedure for Complaints Filed against District Government) provides:

Notwithstanding any other provision of this chapter, the Mayor shall establish rules of procedure for the investigation, conciliation, and hearing of complaints filed against District government agencies, officials and employees alleging violations of this chapter. The final determination in

such matters shall be made by the Mayor or his designee.

4. Although neither party has submitted the full text of the D.C. Worksharing Agreement, the Agreement is a public record of which the court may take judicial notice. *See* FED. R. EVID. 201; *Caha v. United States*, 152 U.S. 211, 221–22, 14 S.Ct. 513, 38 L.Ed. 415 (1894).

administrative exhaustion and the implications of filing an EEOC complaint in a jurisdiction with a worksharing agreement. *See* Mem. Op. at 5, 10–12. As the court explained, Title VII establishes a comprehensive enforcement scheme in which state agencies are given a "limited opportunity to resolve problems of employment discrimination, thereby [making] unnecessary resort to federal relief by victims of the discrimination." *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Congress envisioned that Title VII's procedures would "mes[h] nicely, logically, and coherently with the State and city legislation," and that remedying employment discrimination would be an area in which "[t]he Federal Government and the State governments could cooperate effectively." *See New York Gaslight Club v. Carey,* 447 U.S. 54, 63, 100 S.Ct. 2024 (citing 110 Cong. Rec. 7205 (1964) (remarks of Sen. Clark)).

To foster this spirit of federal-state cooperation, Title VII provides that when an unlawful employment practice occurs in a state or locality that has a law prohibiting the practice and in which an agency has been established to enforce that law, "no charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have commenced under the State or local law, unless such proceedings have been earlier terminated." *See* 42 U.S.C. § 2000e–5(c) ("Section 706(c)"). In the District of Columbia, the OHR is a local entity authorized to grant or seek relief from unlawful employment practices. This suggests that Mr. Fowler was required to file a charge of discrimination with the OHR before proceeding to the EEOC. In practice, however, Section 706(c) has led to the creation of a "referral and deferral" system. *See*

*Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). When a claimant files a charge with the EEOC prior to exhaustion of state or local remedies, the EEOC refers the complaint to the appropriate local agency. The EEOC then holds the complaint in "suspended animation." *See id.* at 526, 92 S.Ct. 616. Upon termination of the state proceedings or expiration of the 60–day deferral period, whichever occurs first, the EEOC automatically assumes concurrent jurisdiction over the complaint. *See id.*

The mechanism by which the EEOC and state agencies conduct deferrals is the so-called Worksharing Agreement.[5] Under such agreements, many states have chosen to waive their period of exclusive jurisdiction during the 60–day "deferral period," while retaining concurrent jurisdiction over the discrimination charges. *See EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 117, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988) (plurality). This waiver allows the EEOC to initiate its investigation immediately. Because courts have construed worksharing agreements as self-executing, a case that might otherwise have been brought first to the state agency can be processed immediately by the EEOC if it was filed there. *See Brennan v. National Telephone Directory Corp.,* 881 F.Supp. 986, 993 (E.D.Pa.1995). Indeed, numerous circuit courts have determined that waivers contained in worksharing agreements automatically commence and terminate state proceedings upon filing with the EEOC. *See, e.g., Marlowe v. Bottarelli,* 938 F.2d 807, 814 (7th Cir.1991) (worksharing agreement's waiver is self-executing and terminates state action instantaneously upon filing with the EEOC); *see Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 879 (3d Cir.1990);

---

5. Congress empowered the EEOC to enter into worksharing agreements. *See* 42 U.S.C. §§ 2000e–4(g)(1) (the EEOC "shall have power to cooperate with and, with their consent, utilize regional, State, local, and other agencies, both public and private, and individuals"); § 2000e–8(b) (the EEOC "may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall ... relieve any person or class of persons in such State or locality from requirements imposed under this section").

*Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir.1994); *Worthington v. Union Pacific R.R.*, 948 F.2d 477, 482 (8th Cir.1991); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1479–80 (9th Cir.1989); *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir.1989).

Like many states, the District of Columbia has entered into a worksharing agreement with the OHR, pursuant to which it has waived its right to exclusive jurisdiction over Title VII cases during the 60–day deferral period. *See* D.C. Worksharing Agreement. In its previous Memorandum Opinion, the court concluded that the EEOC's and the OHR's worksharing agreement relieved the plaintiff of the burden of exhausting his remedies with the state agency. *See* Mem. Op. at 12. As the court stated, Mr. Fowler was "entitled to bring a Title VII action in federal court and was not required to first file his complaint with the District of Columbia agency." *Id.* at 12–13.

In their motion to dismiss, the defendants contend that because the plaintiff is a D.C. government employee, to state a claim under the DCHRA he must also exhaust his administrative remedies as required by D.C.Code § 1–2501 *et seq.* In other words, the defendants fault the plaintiff for not filing a *separate* claim under the DCHRA. The plaintiff contests this proposition, noting that this court has already held that the OHR–EEOC worksharing agreement allowed a case that might have been brought first to the OHR to be processed immediately by the EEOC, where it was first filed. *See* Opp'n at 2–3. The plaintiff argues that his status as a government employee does not vitiate the court's determination that the filing of his claim with the EEOC sufficiently exhausted his state administrative remedies. On this basis, the plaintiff urges the court

to find that he exhausted his remedies *for all purposes. See id.*

The plaintiff's argument finds support in three sources: (1) the EEOC regulations; (2) the text of the Worksharing Agreement itself; and (3) Title VII's overarching policy of cooperation between federal and state entities. With respect to the first of these sources, the EEOC's regulations allow the agency to enter into worksharing agreements with state agencies for receiving and processing claims. *See* 29 C.F.R. § 1626.10 (1998). The regulations stipulate that when a worksharing agreement is in effect, claims received by one agency "shall be deemed received by the other agency." *See id.* § 1626.10(c). Thus, by filing a claim with the EEOC, the plaintiff commences proceedings with both the EEOC and the designated state agency—in this case, the OHR.[6] *Cf. Bolinsky v. Carter Machinery Co., Inc.*, 69 F.Supp.2d 842 (W.D.Va.1999) (when plaintiff files claim with the EEOC, he commences proceedings in both the EEOC and the state agency).

Second, the plain language of the D.C. Worksharing Agreement supports the notion that the plaintiff was not required to file a separate claim with the OHR. The Worksharing Agreement states, in pertinent part:

> In order to facilitate the assertion of employment rights, the EEOC and the [OHR] each designate the other as its agent for the purpose of receiving and drafting charges…. EEOC's receipt of charges on the [OHR's] behalf will *automatically* initiate the proceedings of both the EEOC and the [OHR] for the purposes of Section 706(c) and (e)(1) of Title VII.

> Each Agency will make every effort to transmit electronically all dualfiled [sic]

---

**6.** On its website, the EEOC itself states that "[i]f a charge is filed with the EEOC and also is covered by state or local law, the EEOC 'dual files' the charge with the state or local FEPA, but ordinarily retains the charge for handling." *See* <http:// www.eeoc. gov/facts/qanda.html> ("Federal Laws Prohibiting Job Discrimination: Questions and Answers").

charges to the other Agency within two working days of receipt.

The EEOC and the [OHR] will process all Title VII ... charges that they originally receive.

1. For charges originally received by the EEOC and/or to be initially processed by the EEOC, the [OHR] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day.

D.C. Worksharing Agreement (emphasis added). There is nothing in the Worksharing Agreement to indicate that D.C. employees are held to different filing standards. To the contrary, the Agreement is consistent with the notion that D.C. has agreed to waive its exclusive period of jurisdiction over employment discrimination complaints. Indeed, in *Puryear v. County of Roanoke,* the Fourth Circuit concluded that a similar worksharing agreement was reasonable, plainly authorized by statute, served the goal of the federal legislation, and deserved the deference of the court. *See* 214 F.3d 514, 521 (citing *EEOC v. Techalloy, Maryland, Inc.,* 894 F.2d 676, 678–79 (4th Cir.1990)) ("deference is due [the] EEOC's reasonable interpretation of when state proceedings are commenced and terminated under § 706(c), (e)").

■ Similarly, in *Bolinsky,* the plaintiff filed a charge of discrimination with the EEOC but did not check the box on the EEOC form requesting that the EEOC cross-file with the state agency. *See Bolinsky,* 69 F.Supp.2d at 843. The defendant moved for dismissal on the ground that the plaintiff had not exhausted his remedies as required by section 706(c) of Title VII. *See id.* The court nevertheless ruled that when the designated Virginia state agency waived its right to sixty days of exclusive jurisdiction, "it manifested its intent to terminate proceedings in any case filed with the EEOC." *See id.* at 847.

Finally, the plaintiff argues that it would be contrary to the policy of cooperation embodied in Title VII (and, the court notes, in the Worksharing Agreement) for the court to accept the defendant's interpretation of the DCHRA as requiring the plaintiff to pursue separate administrative remedies for state and federal discrimination claims. *See* Opp'n at 3. The court agrees with the plaintiff on this score. The plaintiff has met his burden of showing that the filing of a charge with the EEOC simultaneously commences proceedings with the state agency. The defendant has not responded with any evidence indicating that the worksharing agreement distinguishes between a government employee and a non-government employee. *See id.* In the absence of such evidence, the court is loath to disrupt the Worksharing Agreement's explicit policy of facilitating the assertion of employment rights in state and federal agencies. *See* Worksharing Agreement; *cf. New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 64 n. 4, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) (Title VII embraces a policy of promoting federal-state cooperation in enforcement by, among other things, authorizing the EEOC to enter into worksharing agreements with those agencies to facilitate the processing of complaints).

Accordingly, the court determines that the plaintiff did exhaust his state remedies for the purpose of bringing a claim under the DCHRA. For this reason, the court concludes that it has jurisdiction over the subject matter, and denies the defendants' renewed motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the court will deny the defendant's renewed motion to dismiss. Specifically, the court concludes that the defendant did exhaust his state remedies for the purpose of bringing a claim under the DCHRA. For this reason, the court concludes that it has jurisdiction over the subject matter.

An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this ⸺ day of November, 2000.