Shirley IVEY, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 05–CV–1029.

District of Columbia Court of Appeals.

Argued Sept. 20, 2006.
Decided June 5, 2008.

Janice Davis, Washington, DC, for appellant.

William J. Earl, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General, at the time the brief was filed, were on the brief, for appellee.

Before KRAMER and FISHER, Associate Judges, and SCHWELB, Senior Judge.

KRAMER, Associate Judge:

Appellant Shirley Ivey filed this action against the District of Columbia alleging discrimination and retaliation in the workplace. Concluding that the decision to grant summary judgment in favor of the appellee was error, we reverse the decision of the trial court in part.

## I.

Ms. Ivey, a District of Columbia government employee since 1970, began her tenure at the Department of Consumer and Regulatory Affairs (DCRA) in 1995. She served the DCRA as a contact representative in the Building and Land Regulation Administration. She was consistently reviewed at an overall satisfactory level, and none of her supervisors expressed serious issues with the quality or quantity of her work, with the exception of Lennox Douglas, who became her immediate supervisor in 1997.

Ms. Ivey gained 150 pounds between 1995 and 2000, and this weight gain limited her ability to walk, breathe, and work. She alleges that during 1997 and 1998, Mr. Douglas repeatedly told her that she would do a better job if she were more attractive, and that he would stop bothering her if she lost some weight. He would explain to Ms. Ivey that he would like her better if she looked like her attractive coworker. He consistently made "fat girl jokes," and told her that she could be his girlfriend if she lost weight. In June 1998, Ms. Ivey complained to Dwight Reeves, the Acting Director of the DCRA, about Mr. Douglas' behavior. She also complained to Teresa Lewis, a DCRA administrator, and other management personnel, but the harassment continued. In what Ms. Ivey contends was a retaliatory act, Mr. Douglas suspended her from work on July 22, 1998, "without cause, justification, or authorization." In front of two other management employees, Mr. Douglas told Ms. Ivey to leave, and that if she did not, he would have her removed. Ms. Ivey balked, and Mr. Douglas "lunged" at her as the other managers restrained him.

Ms. Ivey returned to work two months later, and on or about September 10, 1998, Mr. Douglas relocated her from a private office to a storage room. Ms. Ivey alleges that in the ensuing weeks, while no one was using her former office, she was forced to work in space that was dirty, "crammed with various storage items," contaminated with foul odors from the adjacent, "largely un-serviced" restroom, and

equipped with "an antiquated typewriter and a broken desk chair."

On September 15, 1998, Ms. Ivey requested a meeting with Mr. Douglas and an Equal Employment Opportunity counselor. Mr. Douglas never granted that request. On September 28, Ms. Ivey was given thirty-days notice that she was being terminated on the grounds that she had been absent without leave and that she had negligently performed her duties. She exercised her right to appeal the termination to a "Disinterested Designee." The DCRA informed the Designee that it had dismissed the charge of being absent without leave. The Designee found no cause for Ms. Ivey's termination and rejected her proposed removal on October 19, 1998.

Before the Designee rendered his decision, however, Ms. Ivey suffered what appeared to be a heart attack on October 8, 1998, and left work to be treated at a hospital. Her diagnosis was subsequently downgraded to a less serious coronary condition. She returned to work on April 29, 1999, and was informed that she was being transferred to the Occupational Professional and Licensing Administration so that she would no longer be under Mr. Douglas' supervision.

On August 3, 1999, Ms. Ivey filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), contending that the District of Columbia had engaged in gender-based harassment and retaliation. She amended her complaint on April 24, 2000, adding charges of disability-related harassment and retaliation. Ultimately, the EEOC notified Ms. Ivey that it had concluded its proceedings without any final resolution of her claims, and that she had ninety days to pursue judicial relief.

Ms. Ivey filed suit in the Superior Court against the District of Columbia on December 7, 2000, alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e (2000 & Supp.2007); the District of Columbia Human Rights Act (DCHRA), as amended, D.C.Code §§ 1–2501–2557 (recodified at D.C.Code §§ 2–1401.01–1403.17 (2001 & Supp.2007)); and the Americans with Disability Act, as amended (ADA), 42 U.S.C. §§ 12101–12213 (2000 & Supp.2007). On August 28, 2002, she amended her complaint to add a DCHRA charge of discrimination based upon personal appearance.

The District filed a motion for summary judgment at the close of discovery.[1] The trial court granted the motion, determining that a 180–day limitations period applied to the Title VII and DCHRA claims, and that she had not made an adequate showing of disability for her ADA claims. The court further noted that because she had not mentioned the personal-appearance claims in her EEOC complaint, those claims were also barred due to her failure to exhaust her remedies. This appeal followed.

## II.

Before the Designee, Ms. Ivey's superiors had claimed with specificity her actions that caused them to seek her termination. Ms. Ivey argues that the trial court abused its discretion in denying her motion *in limine* to estop the District from articulating rationales for her termination that were not presented to the Designee.

*Porter Novelli, Inc. v. Bender*, 817 A.2d 185, 188 (D.C.2003), the case relied

---

1. On October 21, 2004, Ms. Ivey filed a motion *in limine* to estop the appellee from offering reasons for her termination that the District had not argued before the Designee. This motion was denied by the trial court.

upon by Ms. Ivey, stands for the proposition that judicial estoppel applies when a litigant switches positions from one proceeding to another. In order for the doctrine of judicial estoppel to apply, however, the former contradictory position must have been taken in a judicial proceeding. *See Lassiter v. District of Columbia,* 447 A.2d 456, 461 (D.C.1982) ("[T]he claim is barred by the doctrine of judicial estoppel (or *estoppel by oath)*" (emphasis added)); *Atkins v. United States,* 283 A.2d 204, 206 n. 4 (D.C.1971) (noting that "for estoppel to apply against a party to litigation that party must have asserted ... one position *in litigation,* and then switched his position" (emphasis added)). The investigation by the Designee was not a judicial proceeding, and, in any case, additional motivations for termination are not inherently contradictory.[2] The trial court's denial of Ms. Ivey's motion *in limine* was therefore not an abuse of discretion.

### III.

■■■ Ms. Ivey argues that the trial court erred in granting the appellee summary judgment. This court reviews a summary judgment decision *de novo,* construing the facts independently in the light most favorable to the nonmoving party. *Abdullah v. Roach,* 668 A.2d 801, 804 (D.C. 1995). "A party seeking summary judgment must demonstrate that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law," *id.,* and "[a]ny doubts about the existence of a factual dispute must be resolved in favor of the non-moving party." *Klock v. Miller & Long Co.,* 763 A.2d 1147, 1150 (D.C.2000).

### A.

■■■ Ms. Ivey argues that the trial court erred in applying a 180–day time limit for the filing of her Title VII and ADA claims with the EEOC. We agree. The 180–day period is the general time limitation for filing EEOC claims. 42 U.S.C. § 2000e–5 (e)(1). If a plaintiff, however, initially institutes proceedings with a state agency authorized to grant relief, the time limit for filing with the EEOC is extended to 300 days. *Id.* Furthermore, state agencies have exclusive jurisdiction over claims for a 60–day period following the initial filing with a state agency. 42 U.S.C. § 2000e–5 (c). A state agency waives this exclusive jurisdiction if proceedings on a complaint "have been [ ] terminated" before the period elapses. *Id.* If the complainant initially files with the EEOC, the EEOC must refer the complaint to the state agency, while holding the complaint in an unfiled "suspended animation" until the 60 days elapse or the state waives its jurisdiction. *Love v. Pullman Co.,* 404 U.S. 522, 525–26, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). Presuming that there is no waiver of exclusive jurisdiction, a complainant therefore has 240 days following the date on which the state's jurisdictional monopoly lapses to file with the EEOC. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 817, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

---

2. Ms. Ivey's reliance on *Henry J. Kaufman & Assocs. v. District of Columbia Dep't of Employment Servs.,* 503 A.2d 684, 685–86 (D.C. 1986) (per curiam), is misplaced. In that case, this court prohibited the employer from articulating new reasons for the termination. But unlike this case, that case was a direct appeal from a decision to terminate an employee. Thus, the question at issue in the earlier proceeding was identical to that presented before the Court of Appeals: Did the employee deserve to be terminated? Here, in contrast, the proceeding before the Designee determined *whether* Ms. Ivey deserved to be terminated, whereas in the proceeding before the trial court the question was *why* the employer terminated Ms. Ivey. The first question does not necessarily have the same answer as the second, in part because different laws must be applied to answer it.

In *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 115–16, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the Supreme Court held that a work-sharing agreement between the EEOC and a state agency, in which both agencies agree to split the cases they process by category, constitutes a "termination" of the proceedings of the state agency. Thus, under *Commercial Office Products,* wherever a work-sharing agreement exists, complainants may wait the full 300 days before filing with the EEOC, which may process the complaint immediately. Actual receipt by the state agency is irrelevant, because the state is deemed to have received the complaint and waived its jurisdiction upon receipt by the EEOC. 29 C.F.R. § 1601.13(a)(4)(ii)(A) (2008).

*Fowler v. District of Columbia,* 122 F.Supp.2d 37, 40–43 (D.D.C.2000), applied the holding of *Commercial Office Products* to the work-sharing agreement in existence between the EEOC and the District of Columbia Office of Human Rights (OHR), and reached the conclusion that the appropriate limitation period for plaintiffs claiming they are aggrieved is 300 days. Although neither party in *Fowler* submitted the work-sharing agreement, the court held it to be a public record for which judicial notice was appropriate. *Id.* at 40 n. 4. Under similar circumstances, the Court of Appeals for the District of Columbia Circuit summarily reversed and remanded a trial court's dismissal for failing to take into account the work-sharing agreement between the EEOC and the OHR. *Osuoha v. District of Columbia,* No. 03–7019, 2003 WL 21466905, 2003 U.S.App. Lexis 12567 (D.C.Cir. June 19, 2003); *accord, Banks v. District of Columbia,* 377 F.Supp.2d 85 (D.D.C.2005); *cf. Griffin v. Acacia Life Ins. Co.,* 925 A.2d 564, 572–74 (D.C.2007) (holding the OHR's automatic dismissal of appellant's EEOC complaint on grounds of administrative convenience, as part of the agencies' work-sharing agreement, did not preclude suit in Superior Court).

■ The District of Columbia's argument supporting summary judgment rests on there being no evidence of record of a work-sharing agreement between the EEOC and the OHR during 1999. Because Ms. Ivey, in her reply brief, provided abundant citations to court decisions that mentioned this specific agreement in passing, this court issued an order for evidence of any agreement to be placed on the record. Both parties complied, and the agreement's existence is firmly established. It is therefore clear that, under *Commercial Office Products,* the appropriate limitations period for Ms. Ivey's federal claims is 300 days, and not the 180 days applied by the trial court. Ms. Ivey filed her claim with the EEOC on August 3, 1999, and it averred that the most recent incident of discrimination had taken place on October 8, 1998, less than 300 days prior. Thus, Ms. Ivey's Title VII claims are timely, and it was error for the trial court to grant the appellee summary judgment with respect to those claims.

**B.**

■ Ms. Ivey further argues that the trial court erred in its holding that she had not alleged facts sufficient to proceed with her claims under the ADA. She contends that her obesity renders her disabled. A disability is defined as involving an "impairment that substantially limits one or more ... major life activities." 29 C.F.R. § 1630.2(g)(1) (2008). A disability substantially limits a major life activity if it "[s]ignificantly restrict[s] ... the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the aver-

age person in the general population can perform that same major life activity." *Id.* § 1630.2(j)(1)(ii). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i).

The trial court reasoned that there was no evidence that Ms. Ivey's weight gain had a physiological cause, nor was there any allegation in the complaint that her obesity had an impact on her work. There is authority, however, for the proposition that morbid obesity, when supported by testimony that it is caused by a physiological condition, can be considered a disability.[3] No such evidence, however, was proffered here. Absent some showing that a physiological condition caused significant impairment to Ms. Ivey's ability to perform her job, her ADA claims cannot proceed under the theory that she has a disability.

■ Ms. Ivey further argues that even if she is not disabled, she may proceed under the ADA if she was regarded as disabled by Mr. Douglas. *See* 29 C.F.R. § 1630.2(g)(3) (2008); *see, e.g., Butterfield v. New York State,* No. 96 Civ. 5144(BDP)(LMS), 1998 WL 401533 at *7–12, 1998 U.S. Dist. Lexis 18676 at *23–43 (S.D.N.Y. July 15, 1998); *Motto v. City of Union City,* No. 95–5678, 1997 WL 816509 at *6–11, 1997 U.S. Dist. Lexis 23401 at *18–37 (D.N.J. Aug. 27, 1997). This, however, would require evidence showing that Mr. Douglas perceived Ms. Ivey's obesity to have a negative impact on her job. The closest such evidence on the record is Ms. Ivey's deposition testimony, where she alleged Mr. Douglas told her she "could do better if [she] looked better." Placed in context, this appears to refer to Ms. Ivey doing better in her working relationship with Mr. Douglas. At most, this demonstrates that Mr. Douglas felt that Ms. Ivey's obesity impaired *his* ability to get along with her. Absent some showing that Mr. Douglas perceived Ms. Ivey's obesity to impair her work, her ADA claims cannot proceed under the theory that she was perceived to have a disability.

■ Ms. Ivey contends that even if her disability discrimination suit fails under the above analyses, her disability retaliation claim survives. If she had a good-faith belief that she was discriminated against because of a disability when she first complained to management, then any retaliation she experienced can be litigated under the ADA, regardless of the factual accuracy of her initial accusations. *See, e.g., Boden v. Anaconda Minerals Co.,* 757 F.Supp. 848, 853–54 (S.D.Ohio 1990); *Spence v. Local 1250, United Auto Workers of Am.,* 595 F.Supp. 6, 10 (N.D.Ohio

---

3. *See Francis v. City of Meriden,* 129 F.3d 281, 286 (2d Cir.1997) (holding that "obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the [ADA]"); *Andrews v. Ohio,* 104 F.3d 803, 808 (6th Cir.1997) (holding, in the context of obesity, that "physical characteristics that are 'not the result of a physiological disorder' are not considered 'impairments' for the purposes of determining either actual or perceived disability" (quoting 29 C.F.R. § 1630.2(h) (App. 1995))); *Cook v. State of R.I., Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17, 23 (1st Cir.1993) (obesity is an impairment when expert testimony established that the plaintiff had "a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system"); *Merker v. Miami–Dade County Fla.,* 485 F.Supp.2d 1349, 1353 (S.D.Fla.2007) ("[O]besity is not a qualifying impairment, or disability, unless it is shown to be the result of a physiological disorder."); *Fredregill v. Nationwide Agribusiness Ins. Co.,* 992 F.Supp. 1082, 1089 (S.D.Iowa 1997) (holding that obesity "must relate to a physiological disorder or condition to meet the statutory definition of disability").

1984); *Hearth v. Metro. Transit Comm'n,* 436 F.Supp. 685, 686–88 (D.Minn.1977).[4]

The record, however, gives no indication that Ms. Ivey had a good-faith, *reasonable* belief that she experienced discrimination because of a disability when she initially complained to Mr. Reeves. *See Hearth, supra,* 436 F.Supp. at 688. Indeed, the fact that her EEOC complaint alleged no disability discrimination until its amendment lends support to an inference that she had not herself classified the discrimination as disability discrimination until well after she took the actions that led to the alleged retaliation. Moreover, Ms. Ivey offers no explanation why any such belief would be reasonable were she to have held it.

Because Ms. Ivey does not allege facts sufficient to maintain a claim under the ADA, it was not error for the trial court to grant the appellee summary judgment with respect to those claims.

### C.

Ms. Ivey further argues that the trial court erred in dismissing her DCHRA claims as untimely. The trial court reasoned that her original EEOC complaint was filed outside the limitations period for DCHRA claims. The trial court also held that her personal-appearance claims were not raised until she amended her Superior Court complaint, and that these claims did not relate back to the claims articulated in her original EEOC complaint.

### 1.

The DCHRA provides that claims brought thereunder must be filed within a one-year period, D.C.Code § 2–1403.04(a) (2001 & Supp.2007), but that period "may

be modified in accordance with § 2–1403.03." *Id.* Section 2–1403.03 empowers the mayor to promulgate rules governing the procedure for discrimination claims against the District of Columbia. Regulations adopted pursuant to section 2–1403.03 require that an employee seek informal resolution by an EEO counselor within 180 days of discovery of the discriminatory act. 4 DCMR § 105.1 (1995). Thereafter, a formal complaint may be filed with the District of Columbia's Office of Human Rights (OHR) within fifteen days of the final interview with the counselor. If no final interview occurs within twenty-one days of the initial consultation, a formal complaint may be filed with the OHR within sixty-days of the initial consultation. *Id.* §§ 105.5, 105.7, 105.8.

Complaints of sexual harassment may be filed directly with the OHR, however. The relevant section states: "An employee who believes that he or she has been discriminated against ... shall consult an EEO Counselor within one hundred-eighty (180) calendar days of the occurrence ... except that a complaint of sexual harassment may be filed directly with the Office." *Id.* § 105.1. As is clear from the text, the 180-day limitations period does not apply to the ultimate filing of the claim with the OHR, but rather to the informal interview with an EEO counselor. Because the section also provides that claims of sexual harassment need not undergo informal counseling, we hold that such claims must fall only within the Code limitations period of one year. *See* D.C.Code § 2–1403.04(a).

Furthermore, we see no need for Ms. Ivey to exhaust administrative remedies for her claims of discrimination other than sexual harassment. It would be duplica-

---

4. Though these cases are all Title VII retaliation claims, retaliation analyses for Title VII and the ADA are essentially identical. *See*

*Fox v. Gen. Motors Corp.,* 247 F.3d 169, 176 (4th Cir.2001) ("[C]ourts have routinely used Title VII precedent in ADA cases.").

tive and unnecessarily burdensome to require her to file her sexual harassment claim with the OHR while alleging the same facts in informal interviews to preserve her remaining theories of recovery. *See Fowler, supra,* 122 F.Supp.2d at 42–43 (holding that the work-sharing agreement between the EEOC and the OHR allows complainants who file with the EEOC to litigate DCHRA claims without being required to exhaust administrative remedies through the OHR as well).

### 2.

The trial court also found that Ms. Ivey's personal-appearance claims were barred because they were absent from her original EEOC complaint, and that she failed to exhaust her administrative remedies with respect to those claims. The personal-appearance claims appeared for the first time in Ms. Ivey's Superior Court amended complaint.

 "[I]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). "[T]he standard for deciding whether [a] plaintiff[ ] exhausted [her] administrative remedies is whether the theory actually relied on at trial was 'like or reasonably related to the allegations of the EEOC charge.'" *Gibbs v. Pierce County Law Enforcement Support Agency,* 785 F.2d 1396, 1400 (9th Cir.1986) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Trust,* 732 F.2d 726, 729 (9th Cir.1984)). "The EEOC charge does not demand procedural exactness. It is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." *Sosa v. Hiraoka,* 920 F.2d 1451, 1458 (9th Cir.1990) (internal quote marks and citations omitted).

The Fourth Circuit held in *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir.1996), that new theories of sexual harassment and age discrimination in an amended EEOC complaint did not relate back to the original theory of sex discrimination and were therefore time barred. The facts underlying the new sexual harassment theory were not alleged in the original complaint, and the original complaint "never mentioned that age was a factor in [the defendant's] alleged discriminatory denial of promotion." *Id.* Similarly, in *Lane v. Lucent Technologies, Inc.,* 388 F.Supp.2d 590 (M.D.N.C.2005), a federal district court held that an amendment did not relate back because neither the plaintiff's original complaint nor his timely amendment "allege[d] *any facts* from which a charge of age discrimination would flow." *Id.* at 599 (emphasis added).

 Here, in contrast, Ms. Ivey's original complaint alleged all of the facts necessary to make out a claim under the DCHRA for personal—appearance discrimination-that she was obese, and that Mr. Douglas made clear that her obesity was the source of his harassment. In court, "the plaintiff may raise any claim that is reasonably related to those asserted in the EEOC filing, even if that claim was not expressly addressed by EEOC." *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994) (internal quotation marks and citations omitted); *see Sanchez, supra,* 431 F.2d at 462 (allowing a plaintiff whose EEOC complaint only alleged sex discrimination to proceed in court on a theory of national-origin discrimination based on facts alleged in the EEOC complaint); *Lazuran v. Kemp,* 142 F.R.D. 466, 468–70 (W.D.Wash.1991) (allowing a plaintiff whose EEOC complaint only alleged sex and race discrimination to proceed in court on a theory of national-origin discrimina-

tion based on facts alleged in the original EEOC complaint). The incidents giving rise to Ms. Ivey's Title VII claims are identical to those that give rise to her personal-appearance claims, and the standard of proof is the same as well. Thus, the personal-appearance claims relate back to her original EEOC complaint and are not untimely.

Because Ms. Ivey was not required to exhaust administrative remedies in connection with her DCHRA claims, and because these claims were timely filed, it was error for the trial court to grant the appellee summary judgment with respect to these claims.

### IV.

In conclusion, we affirm the trial court's denial of Ms. Ivey's motion *in limine,* and its order of summary judgment in favor of the appellee with regard to Ms. Ivey's ADA claims. Because we hold that Ms. Ivey's claims under Title VII and the DCHRA were timely, however, we reverse the order of summary judgment with respect to those claims and remand for further proceedings consistent with this opinion.

*So ordered.*