**Shirley IVEY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 09–CV–1511.**

District of Columbia Court of Appeals.

Argued May 3, 2011.
Decided June 28, 2012.

Janice Davis, Washington, DC, for appellant.

Carl J. Schifferle, Assistant Attorney General, with whom Eugene A. Adams, Interim Attorney General for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before FISHER, Associate Judge, RUIZ, Associate Judge, Retired,* and STEADMAN, Senior Judge.

RUIZ, Associate Judge, Retired:

Appellant Shirley Ivey, a former District of Columbia employee, sued the District for discrimination and retaliation in her employment. The District moved successfully for summary judgment. On appeal, this court reversed in part and remanded. *Ivey v. District of Columbia,* 949 A.2d 607 (D.C.2008). A trial was held in November 2009 and the jury returned a partial verdict in favor of appellant, but awarded her only nominal damages. Appellant requests a new trial on the issue of damages, arguing that the trial court abused discretion in failing to reinstruct the jury on the law of compensatory damages after the jury delivered a note to the court. She also claims that several evidentiary rulings were erroneous. We affirm, thus we deny appellant's request that we remand the case for a new trial on damages.

## I. Factual Background

We summarize the facts as set out in our opinion remanding the case for trial. Appellant started her first position as a District of Columbia employee in 1970. *See Ivey,* 949 A.2d at 609–10. She worked at the Department of Consumer and Regulatory Affairs (DCRA) as a contact representative in the Building and Land Regulation Administration. In 1997, Lennox Douglas became her supervisor. From 1995–2000, appellant gained over 150 pounds, which limited her mobility at work. Douglas belittled appellant with re-

---

* Judge Ruiz was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on September 1, 2011.

marks about her weight and personal appearance throughout 1997 and 1998.

In June 1998, appellant complained about Douglas's behavior to the DCRA's Acting Director and several other managers at the agency. No action was taken, and Douglas continued his harassment. Then, on July 22, 1998, in what appellant alleged was a retaliatory action, Douglas suspended appellant from work. Appellant returned to work approximately two months later and found that her workspace had been relocated from a private office to a room she characterized as a dirty "storage room" that was ill-equipped for her duties.

Several days later, on September 15, appellant requested a meeting with Douglas and an Equal Employment Opportunity counselor. No meeting was ever held. Instead, on September 28, appellant was given 30–day notice that she was being terminated for negligent performance of her work responsibilities and for being absent without leave. She appealed her termination to a Disinterested Designee.[1] In its submissions to the Disinterested Designee, DCRA relied upon appellant's negligent work performance as the sole grounds for termination, in effect abandoning the allegation of absence without leave. On October 19, the Disinterested Designee found that there were no grounds for appellant's termination on the basis of her work performance and recommended that DCRA rescind its proposed termination. DCRA did not terminate appellant, and she returned to work on April 29, 1999, after several months of medical leave for a heart condition, to a new position at the Occupational Professional and Licensing Administration, also part of DCRA, but not under Douglas's supervision.

Upon notification by the Equal Employment Opportunity Commission that her grievances could not be finally resolved, appellant filed a complaint against the District in Superior Court. She sued the District for discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e (2006); the District of Columbia Human Rights Act (DCHRA), D.C.Code § 2–1401.01 *et seq.* (2001); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (2006). The trial court granted the District's motion for summary judgment and, on appeal, we reversed and remanded the Title VII and DCHRA claims. *See Ivey*, 949 A.2d 607. A trial was subsequently held in November 2009.

## II. Jury Instructions
### A.

On remand, trial was held on: (i) gender-based hostile work environment claims under Title VII and the DCHRA; (ii) a personal-appearance-based hostile work environment claim under the DCHRA; and (iii) retaliation claims under Title VII and the DCHRA. Prior to trial, appellant proposed the following jury instruction on compensatory damages:

If you should find that the defendant is vicariously liable for [the plaintiff's] supervisor's harassment and/or retaliation, then you must determine an amount that is fair compensation for the plaintiff's damages. You may award compensatory damages only for injuries or expenses the plaintiff proves were

---

1. An employee of the District of Columbia, upon receiving a notice of termination, may have the proposed termination reviewed by a "Disinterested Designee," a third party who, among other qualifications, is not "in the supervisory chain of command between the proposing official and the deciding official, nor subordinate to the proposing official," and has "no direct and personal knowledge (other than hearsay that does not affect impartiality) of the matters contained in the proposed removal action." D.C. Personnel Regs. § 1612.2.

caused by the defendant's allegedly wrongful conduct. The damages you must award must be fair compensation, no more and no less.

You may award compensatory damages for emotional pain, suffering, inconvenience and/or mental anguish if you find these were caused by the defendant's unlawful conduct.

You may award damages for any pain, suffering or mental anguish that the plaintiff experienced or continues to experience as a consequence of her supervisor's harassment and/or retaliation. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing compensation to be awarded for these elements of damages. Any award you make should be fair in light of the evidence presented at trial.

In determining the amount of any compensatory damages that you decide to award, you should be guided by dispassionate common sense. You must use sound discretion in fixing an award of compensatory damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guess work. On the other hand, the law does not require that the plaintiff quantify or prove the amount of her emotional distress with mathematical precision, but only with as much definiteness and accuracy as circumstances permit.

The District did not propose jury instructions on damages.

■ We have no record of whatever discussions the parties may have had (if any) with the court about the proposed jury instructions. With respect to damages,

the court instructed the jury on compensatory and nominal damages at the end of trial, combining parts of several standard jury instructions,[2] as follows:

If you find for the plaintiff, then you must award the plaintiff a sum of money which will fairly and reasonably compensate her for all of the damage which she has experienced which was caused by the defendant.

The burden of proof is upon the plaintiff to establish all elements of her damages by a preponderance of the evidence. The plaintiff must prove her damages with reasonable certainty. You may only award the plaintiff damages for past, present, or future harm or injury that are not speculative.

Speculative damages are those that might be possible but that are remote or based upon guesswork. The plaintiff does not have to prove her exact damages, however. You may award the plaintiff damages that are based on a just and reasonable estimate derived from relevant evidence.

Similarly, the plaintiff does not need to show that there is an absolute certainty that the injury or loss will continue into the future. You may award damages to compensate the plaintiff for injury and los[s]es that will probably continue.

If you find in favor of the plaintiff then you consider whether she is entitled to any damages. You may award damages for any of the following items that you find that defendant caused: Any emotional distress that the plaintiff has suffered in the past; any inconvenience the plaintiff has experienced.

**2.** The court's instructions drew from Standardized Civil Jury Instructions for the District of Columbia Nos. 12–1 (Damages—Jury to Award), 12–3 (Burden of Proof—Specula-tive Damages), 13–1 (Damages—Elements), and 13–9 (Recovery for Emotional Distress) (2011 ed. rev.).

Any damages you might award for physical injury or physical sickness may not be taxable. Any damages that you might award for emotional distress and for all other types of harm may be taxable.

The plaintiff is seeking damages for emotional distress. You may award damages for emotional distress if, one, the defendant caused a physical injury to the plaintiff; the plaintiff was in the zone of danger and defendant's conduct caused the plaintiff to have fear for her own safety; or the defendant's conduct endangered the plaintiff.

If the plaintiff suffered no physical injury, then you may award the plaintiff damages for emotional distress only if the emotional distress is serious and verified.[3]

If you find that defendant has violated either the D.C. Human Rights Act or Title VII, you may award plaintiff compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses including loss of reputation.

If you find in favor of plaintiff but you find that plaintiff's damages have no monetary value, then you must return a verdict for plaintiff in the nominal amount of one dollar.

During jury deliberations, the foreperson sent the court a note:

If we were to have to address the damages questions, we would appreciate some additional guidance. The Court's instructions tell us that we are not to speculate as to damages. We are of the opinion that the plaintiff's evidence does not provide us with any evidence that would allow us to make a determination on damages that would not be speculative. What would you advise?

After the note was read to counsel, the following colloquy ensued:

**Court:** Plaintiff, what is your position on the note?

**[Counsel for Appellant]:** Your Honor, I believe that it is possible for us to provide the jurors with guidance on the issue of damages.

**Court:** What is the guidance?

**[Counsel for Appellant]:** And my guidance would be consistent with the case in D.C., the Psychiatric Institute of Washington versus the District of Columbia Commission on Human Rights.[4] And in that decision it—damages included it was possible to·assess damages on the elements of mental anguish, pain and suffering, and on—.

**Court:** I've already given that instruction. And so—and defendant? I'm sorry anything else you want to say [counsel for appellant]?

**[Counsel for Appellant]:** Yes. It seems—it seems to me, Your Honor, that the jurors have some concern as to how it is that they—they can assess damages and what are the parameters for assessing such damages.

---

**3.** The seventh paragraph of the trial court's instructions, based on Standard Instruction No. 13–9 (Recovery for Emotional Distress), sets out physical injury or "zone of danger" as a prerequisite to the award of damages for emotional distress. Although this instruction is applicable to some claims of negligent infliction of emotional distress, *see Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 811 (D.C.2011) (en banc), it is not a proper limitation to the award of damages for mental dis-

tress as compensation for injury caused by unlawful discrimination under Title VII or the DCHRA. *See id.* at 809 (noting that damages for mental distress are awarded "incident to" statutory discrimination claims (citing *Daka, Inc. v. McCrae*, 839 A.2d 682, 691 (D.C. 2003))).

**4.** *Psychiatric Inst. of Washington v. District of Columbia Comm'n on Human Rights*, 871 A.2d 1146 (D.C.2005).

Court: Well, the jury instructions tell them what to consider. Defendant?

[Counsel for Appellee]: The defendant's position is, Your Honor, just as you said, it's in the jury instructions. I think you just generally refer them back to the jury instructions.

The jurors were called back and the trial judge stated,

I did receive your note, and the only guidance I can give you is to reread the instructions on damages. Remember that the plaintiff has to prove all claims by a preponderance of the evidence. So, you need to reread—even if you have to reread some other instructions but, certainly, you need to reread the instructions on damages.

The jury and the parties were then excused for a lunch recess.

That afternoon, when the parties returned from the lunch recess, counsel for appellant initiated the following colloquy:

[Counsel for Appellant]: I'd like to say for the record, that—

Court: Yes?

[Counsel for Appellant]:—it's obvious that the jury is confused as to the assessment of damages for emotional distress, and it seems that they would require some further instructions; specifically, that the computation, the calculation of intangible items such as emotional distress is something that— that you don't have to introduce evidence, you don't have to introduce evidence of the monetary value of such intangible things as pain and suffering into evidence.

And that they need to know that there's no exact standard for fixing that type of compensation to be awarded as an element of damage. And they also need to know that the law doesn't require that the plaintiff quantify or prove the amount of emotional distress with any mathematical precision. . . .

Court: Yes. And they have already been so instructed and they've been advised by the Court to reread those instructions. I'm not going to point to any specific instructions . . . Your objection is noted.

The jury resumed deliberations and returned a verdict finding that the "District of Columbia, through Lennox Douglas' conduct, verbally harassed Plaintiff based on her personal appearance which caused a hostile work environment" and also retaliated against her by attempting to terminate her. The jury awarded appellant $1 in nominal damages.

**B.**

Appellant attributes the jury's decision to award only nominal damages to the jury's misapprehension of the law, and argues that the "trial court abused its discretion here in refusing to provide supplemental instructions adequately explaining how the jury should have proceeded to consider awarding compensatory damages for intangible mental distress injuries." Specifically, appellant contends that the note expressed the jury's confusion about how to reconcile the instruction that "[t]he plaintiff must prove her damages with reasonable certainty" with the instruction that "[t]he plaintiff does not have to prove her exact damages." The trial court should have clarified this for them with supplemental instructions, appellant argues, and its failure to do so was an abuse of discretion that entitled her to a new trial on damages before a properly instructed jury.

 " 'Decisions regarding reinstruction of a jury are committed to the discretion of the trial court; absent abuse of that discretion we will not reverse.' " *Graham v. United States,* 703 A.2d 825, 832 (D.C. 1997) (quoting *Davis v. United States,* 510 A.2d 1051, 1052 (D.C.1986)). When a jury asks for guidance on a specific issue, the

trial court is obligated to respond with "'concrete accuracy'" to the jury's question. *Alcindore v. United States*, 818 A.2d 152, 155 (D.C.2003) (quoting *Whitaker v. United States*, 617 A.2d 499, 501 (D.C. 1992)). Similarly, "[w]hen a jury sends a note which demonstrates that it is confused, the trial court must not allow that confusion to persist; it must respond appropriately." *Id.* In some cases, the nature of the question asked or the confusion expressed may be such that simple referral to the original instructions is appropriate because the judge knows that the answer to the question is readily to be found there or that rereading the instructions is likely to clear the confusion. However, referral to the original instruction cannot be adopted as a reflexive response (even if the original instruction was proper) because a jury's question that comes after instruction suggests that—at least in the jurors' estimation—the original instructions have not provided sufficient guidance on the law the jury is to apply to the evidence presented at trial. Whether the trial court's response referring the jury to reread the initial instruction was adequate to the task in this case depends on what the jury's note asked, and whether (and, if so, how clearly) the original instructions addressed the jury's query.

According to the District, the jury's note should be interpreted as having meant that the jurors concluded, prior to sending the note, that appellant had shown no entitlement to compensatory damages, and the jury was merely asking the court for "validation" of an award of nominal damages. Under this view, the District argues, any additional instructions "would have improperly suggested to the jury that it should re-evaluate its view of the evidence," and that directing the jury to simply reread the instructions was the only appropriate course of action. *See Graham*, 703 A.2d at 832 (finding no abuse of discretion in court's decision directing jury to listen again to original instructions "[b]ecause the trial court had already provided instructions regarding these terms, and because of the trial court's concern that it not dictate the outcome of the case") (quoting *Whitaker v. United States*, 617 A.2d 499, 501 (D.C.1992)).

Appellant, on the other hand, argues that the note revealed confusion about the instruction that appellant had the burden of proving the *fact* of her injuries, but at the same time was not obligated to prove a precise *dollar amount* of her injuries. Under this view, the note indicated that jurors were under the mistaken impression that appellant needed to provide evidence that monetized the damages she suffered in order for the jury's award not to be "speculative."

■ Considering the instructions as a whole, and the jury's express request for "additional guidance," there is reason for concern, as there is potential for conflict between the instruction that a "plaintiff must prove her damages with reasonable certainty" and "may only award ... damages for past, present, or future harm or injury that are not speculative," and the instruction that a "plaintiff does not have to prove her exact damages." Some confusion may result from the use of the word "damages" in the sense of "injury" as well as in the sense of "monetary award." The use of the same term to express two related, but distinct concepts, amenable to different standards of proof, is susceptible to misinterpretation, particularly by a layperson, which could lead to a fundamental misunderstanding of what the law requires. *See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles

of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."); *Psychiatric Inst. of Washington*, 871 A.2d at 1154 (acknowledging the "inevitably imprecise limits of a 'reasonable range' of compensation" for injuries in a discrimination suit (quoting *Louison v. Crockett*, 546 A.2d 400, 404 (D.C.1988))); *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982) (indicating that "damages are not required to be proven with mathematical certainty"). Other courts have warned against the subtlety of this particular point. *See, e.g., Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 39 (2d Cir.1985). If the jury in this case deliberated under such a misapprehension or confusion, that might explain why, after the jury was denied the requested additional help in evaluating the evidence with respect to damages, it then found the District liable for discrimination and retaliation, but awarded appellant only nominal damages.[5]

In this case, we need not finally resolve whether the trial court erred in failing to reinstruct the jury on this point of potential jury confusion because, as a threshold matter, we do not find evidence of *any injury* to appellant in the record that has been presented to the court, much less the nature and extent of her damages. We have been provided with selected excerpts of the trial transcript, none of which contains testimony or refers to other evidence relevant to this issue. At oral argument, counsel for appellant (who was also trial counsel) represented that she had introduced ample evidence establishing appellant's injuries in the form of her own testimony, testimony from her coworkers, friends, and her physician (general practitioner) to the effect that, as a result of the harassment suffered at work, appellant felt humiliated and was depressed: her normal vibrancy changed, her entire life changed, and she became withdrawn, cloistered, and non-communicative. This representation was directly contradicted by counsel for the District, who asserted that appellant had presented no such evidence of injury.

▪ It is the plaintiff's burden to prove injury caused by the defendant's unlawful conduct and, even though damages for emotional distress need not be quantified, there must be a basis from which the jury can make a common-sense assessment.[6] *See Manes v. Dowling*, 375 A.2d 221, 224 (D.C.1977) ("[T]he plaintiff must prove that the damages were in fact the direct result of the injuries caused by the defendant."). On appeal, it is appellant's bur-

---

**5.** "[S]tandard instructions need amendment to reflect the application of the law." *Speed v. United States*, 562 A.2d 124, 128 (D.C. 1989). Portions of appellant's proposed instructions appear in model jury instructions for federal circuits. *See, e.g.,* Third Circuit Model Civil Jury Instructions (2010), § 5.4.1 ("No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence."); Fifth Circuit Pattern Jury Instructions (Civil) (2009), §§ 15.2, 15.4 (instructing, with respect to damages for pain and suffering: "You are not trying to determine value, but an amount that will fairly compensate plaintiff

for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage.").

**6.** Although it is well-nigh impossible to prove intangible non-economic damages directly, counsel may (but is not required) to prove it indirectly by reference to related economic damages. For example, counsel could present evidence that the plaintiff lost significant time from work or withdrew from her customary social and family relationships as a way of pointing out the magnitude of the plaintiff's pain and suffering.

den to present the court with "the appellant's contentions and the reasons for them, *with citations to* the authorities and *parts of the record* on which the appellant relies." D.C.App. R. 28(a)(8)(A) (emphasis added). The record on appeal includes the transcript of the proceedings as well as the papers and exhibits filed in Superior Court and the docket entries. *Id.* R. 10(a). With respect to the transcript, however, it is appellant's duty to order relevant parts of the transcript within ten days after filing the notice of appeal, and, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." *Id.* R. 10(b)(1)-(2).

■ In this case, appellant is arguing that, as a result of the trial court's failure to reinstruct, the jury was misled (or confused) to reach a verdict of nominal damages that is "contrary to the evidence." But we do not have a record of what that evidence is because appellant has not presented to the court a record that supports an award of compensatory damages.[7] "Under the DCHRA, the jury may compensate a plaintiff for embarrassment, humiliation, and indignity stemming from [abusive working conditions]." *Fred A. Smith Mgmt. Co. v. Cerpe,* 957 A.2d 907, 914 (D.C.2008). Here, in finding the District of Columbia liable, the jury could infer from evidence that appellant was verbally harassed about her appearance, that a reasonable person in her position would have felt humiliated and embarrassed and suffered mental distress as a result. In addition, to support a finding of liability for a hostile work environment, the jury

had to find that the plaintiff must have *subjectively* experienced an abuse so serious and pervasive as to alter the terms and conditions of employment. *See Lively v. Flexible Packaging Ass'n.,* 830 A.2d 874, 889 (D.C.2003); *Daka, Inc. v. Breiner,* 711 A.2d 86, 92 (D.C.1998). The jury was properly instructed on the elements of a hostile work environment and the need to make a finding that appellant subjectively perceived the work environment as hostile to her.[8] The jury found that the District was liable for a hostile work environment and therefore must have found that appellant subjectively perceived it to be hostile. The District has not appealed the jury's verdict on liability.

■ Evidence that supports liability may be relevant to, but is not necessarily sufficient to support, an award of compensatory damages. In the absence of a sufficient record on appeal, we have no choice but to proceed as if appellant presented no evidence to show that she suffered pain and suffering resulting from the abusive work environment. *See Van Durr v. Kator & Scott, Chartered,* 788 A.2d 579, 581 (D.C.2002) (" 'Appellate review is limited to matters appearing in the record before us, and we cannot base our review of errors upon statements of counsel which are unsupported by that record.' " (quoting *Cobb v. Standard Drug Co.,* 453 A.2d 110, 112 (D.C.1982))). This, in turn, compels the conclusion that any error in the trial court's failure to reinstruct the jury was harmless. *See Wood v. Neuman,* 979 A.2d 64, 76 (D.C. 2009) ("To obtain a reversal, an appellant must show that the erroneous ruling resulted in substantial prejudice to her

---

7. The lack of transcript to support appellant's claim on appeal and her counsel's contested representations of the evidence introduced at trial was made clear at oral argument. There has been no attempt by appellant, however, to

supplement the record on appeal since oral argument.

8. The trial court gave Standard Instruction No. 24-8 (Hostile Work Environment–Essential Factual Elements).

case."); D.C.Code § 11–721(e) ("On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); *cf. Campbell–Crane & Assocs., Inc. v. Stamenkovic*, 44 A.3d 924 (D.C.2012) (upholding verdict for significant compensatory damages where court erred in instructing the jury, but substantial evidence presented indicated jury must have made required finding on subjective element of hostile working environment claim omitted from jury instructions). We, therefore, cannot, on the record presented to the court, find that appellant was prejudiced by the trial court's failure to reinstruct the jury.

### III. Evidentiary Rulings

 Appellant also challenges four of the trial court's evidentiary rulings. She argues that the court erred in (i) excluding the report of the Disinterested Designee;[9] (ii) preventing appellant from introducing into evidence a copy of §§ 1600–1610 of the D.C. Personnel Regulations;[10] (iii) preventing appellant from introducing into evidence one of the District's interrogatory responses about the egregious nature of Douglas's harassment;[11] and (iv) allowing the District to introduce into evidence several internal memoranda, allegedly written prior to the District's attempt to terminate her, criticizing appellant's work performance. We do not reach the merits of any of these contentions.

The evidence appellant wanted to introduce is principally relevant to appellant's claim that the District retaliated against her in violation of the DCHRA and Title VII, issues the jury resolved in appellant's favor. Therefore, any error in excluding the evidence for that purpose would be harmless. We do recognize that to the extent this evidence sheds light on the egregiousness of Douglas's harassment, it may be considered in calculating damages under the DCHRA. *See* 4 DCMR § 211.2 (allowing the D.C. Human Rights Commission, in awarding damages in an administrative proceeding, to consider the "[w]illfulness, recklessness, or repetition of the unlawful discriminatory acts or practices of the respondent to the extent that they constituted harassment or caused unusual inconvenience"); *Fred A. Smith Mgmt. Co.*, 957 A.2d at 914 (recognizing that a jury may, in some circumstances, also consider factors in 4 DCMR § 211.2). In light of our previous discussion that there is no record evidence that appellant personally was injured and suffered damages as a result of the harassment, we conclude

9. Appellant argues that the Disinterested Designee Report, which recommended the rescision of her proposed termination, would "further establish that the defendant's rebuttal explanation justifying her proposed discharge was pretextual" and "could have also weighed in the jury's evaluation of compensatory damages as well as liability under DCHRA."

10. Appellant argues that, with "the admission of the Personnel Regulations," she "could have potentially established that the defendant contravened its own disciplinary policy when it suspended her, segregated her and/or proposed to terminate her."

11. According to appellant, the District's answer to the interrogatory "establish[ed] that the [District] treated her in a uniquely adverse fashion by segregating her in a storage room to work and that the defendant had not ever similarly segregate[d] any of its other DCRA employees." Appellant then argues, "such potential evidence could have constituted additional proof of the defendant's willful, reckless and repeated harassment and retaliation against the plaintiff, and consequently could have also weighed in the jury's evaluation of compensatory damages as well as liability under DCHRA."

that any error in the court's evidentiary rulings was harmless. *See Wood,* 979 A.2d at 76 ("To obtain a reversal, an appellant must show that the erroneous ruling resulted in substantial prejudice to her case.").

For the foregoing reasons, the judgment of the Superior Court is hereby

*Affirmed.*