*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CV-0942

MEDSTAR GEORGETOWN MEDICAL CENTER, INC., *et al*., APPELLANTS,

v.

DAVID S. KAPLAN, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-004820-M)

(Hon. Ebony M. Scott, Trial Judge)

(Argued September 24, 2025     Decided December 18, 2025)

*Derek Stikeleather*, with whom *Larry D. McAfee*, *Janet A. Forero*, and *Rachel I. Viglianti* were on the brief, for appellants.

*Albert F. Belcuore*, with whom *Catherine D. Bertram*, and *Kieran Murphy* were on the brief, for appellees.

Before EASTERLY and SHANKER, *Associate Judges*, and RUIZ, *Senior Judge*.[*]

EASTERLY, *Associate Judge*: A jury found MedStar Georgetown Medical

Center, Inc. and MMG-GI at Lafayette Center d/b/a MedStar Medical Group II, LLC

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

(together "MedStar") liable for breaching the national standard of care when treating David Kaplan and for failing to obtain his informed consent for treatment and awarded him an aggregate of $4 million in damages. On appeal, MedStar seeks reversal of this judgment or at a minimum vacatur or reduction of the damages award, arguing: (1) the verdict sheet "promoted duplicative damages" because it contained separate lines for physical injury and emotional distress, (2) Mr. Kaplan made an array of improper arguments in closing which "enflamed and misled" the jury, and (3) the damages award was excessive in relation to Mr. Kaplan's injury. We affirm.

## A. Verdict Form

MedStar argues that the trial court should not have drafted a verdict form that allowed the jury to award damages for "Past and Future Physical Injury" on one line and "Past and Future Emotional Distress" on another. Although Mr. Kaplan asserts that this argument is unpreserved, we disagree. MedStar objected to including more than one line on the verdict form for the jury's damages award, and its statement "we understand the ruling of the court" when it lost that battle in no way signaled a waiver of this argument. *See Evans v. United States*, 304 A.3d 211, 222 (D.C. 2023) (explaining that "our precedents do not require counsel to press their positions until blue in the face . . . [and] issues are preserved so long as the trial court was on notice

that [defense counsel's] position on the correct rule of law differed from the court's") (citation modified). Nor did MedStar waive this argument when it was asked to review the final verdict form before it was given to the jury; rather, its general statement that it was "satisfied" signaled an affirmation that the verdict form as amended reflected all the changes the court had just ruled upon. Accordingly, we turn to the merits of MedStar's argument and review the court's approval of the verdict form for abuse of discretion. *See Brooks v. D.C. Hous. Auth.*, 999 A.2d 134, 140 (D.C. 2010) (explaining that "[t]he controlling rule . . . is that a trial judge has discretion to decide the form and substance of verdict-form interrogatories so long as they cover all material factual issues" and reviewing for abuse of discretion) (citation modified).

MedStar asserts that noneconomic damages for "pain and suffering . . . are comprised of a group of imprecise and overlapping categories, such as 'pain, mental anguish, anxiety, emotional distress, and nervous shock,'" quoting Lars Noah, *Comfortably Numb: Medicalizing (and Mitigating) Pain-and-Suffering Damages*, 42 U. Mich. J.L. Reform 431, 432 (2009). But this descriptive statement from a law review article does not support its categorical argument that, because "noneconomic damages are a single category for purposes of a monetary award," the trial court erred in listing two types of noneconomic damages on the verdict form. Rather, in the concrete context of verdict forms, the question is whether the particular

noneconomic damages that have been separately listed are sufficiently conceptually distinct such that the jury would not be induced to award the plaintiff more than they are entitled to. *See Woodward & Lothrop v. Hillary*, 598 A.2d 1142, 1146-47 (D.C. 1991) ("[A] cardinal principle of law is that . . . a plaintiff can recover no more than the loss actually suffered.") (citation modified). Here, the court opted to separately list "Past and Future Physical Injury" and "Past and Future Emotional Distress" on the verdict form and we are hard-pressed to see how the trial court abused its discretion in doing so.

Physical injury and emotional distress are plainly two distinct concepts, notwithstanding that both are types of noneconomic damages. *See* Restatement (Second) of Torts § 905 (A.L.I. 1965) ("Compensatory damages that may be awarded without proof of pecuniary loss include compensation (a) for bodily harm, and (b) for emotional distress."); Restatement (Third) of Torts § 45 cmt. a (A.L.I. 2025) (explaining "emotional harm is distinct from bodily harm"). Indeed, the standard instruction given to juries awarding damages—which the judge gave to the jury in this case without objection from MedStar—reinforces that "physical injury" is conceptually separate from "emotional distress." Standardized Civil Jury Instructions for the District of Columbia, No. 13-1 (rev. ed. 2025) (directing that jurors "may award damages for any of the following harms . . . (1) the extent and duration of physical injuries sustained by [Plaintiff]; (2) the effects that any physical

injuries have on the overall physical and emotional well-being of [Plaintiff]; (3) any physical pain and emotional distress that [Plaintiff] has suffered in the past or may suffer in the future").[1]

Moreover, Mr. Kaplan presented evidence at trial that he had suffered two distinct kinds of harm. He experienced physical injury: the continuation of his severe Crohn's disease that did not respond to the steroids MedStar prescribed, the complete deterioration of his hip bones, and the eventual replacement of both hips, which involved three hip surgeries with lengthy and painful recoveries. And he experienced emotional distress. Previously an "intense runn[er]," as a result of his hip replacements he suffered the loss of participating in an activity that he loved and found "therapeutic." He also testified about the "embarrassment" that he felt while dating as a result of his hip replacements, particularly since "intimate activities" were "impacted." More generally, even though he was still a young man, he was not able to live his life "as freely as he would have hoped," because of the restrictions on his movement; and his sister recounted the time she observed Mr. Kaplan "almost tearing up" because he could no longer play tennis with his niece. The fact that the jury awarded different amounts of damages for Mr. Kaplan's physical injury and

---

[1] When the trial court gave the jury the verdict form, it instructed them that "nothing in it replaces or modifies the instructions of law I have already given you . . . . The form is meant only to assist you in recording your verdict."

emotional distress indicates that they understood the difference between the two and were able to evaluate each line item independently.

MedStar complains that "Mr. Kaplan identifies no case where a court condoned parsing out 'physical injury' and 'emotional distress' on a verdict sheet." But, as the appellant, MedStar bears the burden of "convincing the appellate court that the trial court erred." *Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C. 1982) (citation modified); *see also Ivey v. District of Columbia*, 46 A.3d 1101, 1110 (D.C. 2012) ("[I]t is appellant's burden to present the court with 'the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'") (citation modified).  Thus it falls to MedStar to identify authority in which an appellate court has rejected a verdict form like the one in this case.  MedStar has not done so.  Rather the cases it cites in support of its argument are inapposite because they address verdict sheets with different language.  *See Marxmiller v. Champaign-Urbana Mass Transit Distr.*, 90 N.E.3d 1064, 1075 (Ill. App. Ct. 2017) (verdict form duplicative where it allowed recovery for "pain and suffering" and separately for "emotional distress"); *Powers v. Ill. Cent. Gulf R.R. Co.*, 438 N.E.2d 152, 153, 156 (Ill. 1982) (verdict form duplicative where it allowed recovery for "nature, extent, and duration of injury," "disability resulting from the injury," and "pain and suffering caused by injury"); *South Covington & Cincinnati St. Ry. v. Vance*, 278 S.W. 116, 120 (Ky. Ct. App. 1925) (verdict form

"authoriz[ed] the assessment of double damages" where it allowed recovery for "physical pain and mental anguish . . . for his permanent injury . . . for his diminution of his power to work and labor").

For all of these reasons, we are unpersuaded that the trial court abused its discretion in drafting the verdict form in this case.

## B. Closing Argument

MedStar argues that the trial court failed to adequately address its objections to Mr. Kaplan's closing which MedStar asserts wrongly (1) made repeated "[r]eferences to 'safety' and 'protecting' patients" that "misstate[d] the standard for liability," (2) "anchored" the jury to a $4 million damages award, and (3) made prohibited "golden rule" arguments which "improperly influenc[ed] the jury." Ordinarily we would review such arguments for abuse of discretion, *Lewis v. Voss*, 770 A.2d 996, 1008 (D.C. 2001), but here again Mr. Kaplan raises lack of preservation as an impediment to our review. We conclude that, by objecting after its own closing and before Mr. Kaplan's rebuttal, MedStar adequately preserved the first and second arguments for our review. *See Chatmon v. United States*, 801 A.2d 92, 100 (D.C. 2002) ("The purpose of the requirement of timely exceptions to trial errors is to alert the trial court and give it an opportunity to correct the error."). But at no point did MedStar preserve the third argument. The only reference at trial to a

"golden rule" type argument came from the court when it rejected MedStar's objection to Mr. Kaplan's suggested range of potential damages awards, *see infra*, contrasting this suggestion with the out-of-"bounds" argument of "asking the jurors to place themselves in the shoes of someone else, of giving . . . [a] golden rule argument" (which MedStar had not attributed to Mr. Kaplan).[2]  Accordingly, we limit our abuse-of-discretion review to MedStar's first two arguments and decline to review the third.  *See Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013) (explaining that "[i]n general, this court's review on appeal [in civil cases] is limited to those issues that were properly preserved," unless we conclude that review is "necessary to prevent a clear miscarriage of justice apparent from the record").

Turning to the merits, MedStar claims that Mr. Kaplan's counsel's closing improperly "encouraged the jury to abandon the appropriate standard of care analysis and instead decide whether [MedStar] kept Mr. Kaplan 'safe' and 'protected'" and necessitated a curative instruction.  Although the trial court seemed

---

[2] It appears MedStar pressed this claim in its post-trial motion pursuant to D.C. Superior Court Rules of Civil Procedure 50(b) and 59(e).  (Although MedStar did not provide this court with a copy of this motion, we have the trial court's ruling which contains a summary of MedStar's argument.).  The problem is that MedStar's brief contains nothing more than conclusory assertions that the trial court abused its discretion in denying MedStar's post-trial motion.  We thus decline to review any challenge to the trial court's post-trial ruling.  *See MP PPH, LLC v. D.C.*, 339 A.3d 132, 145 (D.C. 2025) (explaining that "our forfeiture doctrine in its most basic form bars us from addressing arguments either (1) not made or (2) expressed in such broad strokes that, to act on them, we must build out their foundation ourselves").

persuaded by MedStar's argument that Mr. Kaplan's counsel had gone "outside the bounds" of permissible argument, we question whether Mr. Kaplan's "safety" and "protection" references actually invited the jury to disregard the national standard of care, particularly when examined in the context of the whole of his closing. To begin with, Mr. Kaplan's counsel mentioned the standard of care seventeen times in his closing, and pointedly reminded the jury, "the question is: [d]id the MedStar defendants breach the national standard of care in terms of caring for David Kaplan?" More specifically, Mr. Kaplan's counsel reminded the jury that under the national standard of care there was only a three-month window of time within which Mr. Kaplan could safely take steroids,[3] and his "safety" and "protection" references were seemingly callbacks to this standard of care evidence.[4]

---

[3] "[A]ccording to the national guidelines, you're only supposed to stay on steroids for three months. So that's really important."

[4] For example, walking through the chronology of Mr. Kaplan's care, counsel argued that (1) at the end of October 2018, MedStar had "used up a month [of the three-month maximum for taking steroids]. What [the defense experts] said is you've got to move. You've got to act. You need to protect this patient"; (2) "You're now another two weeks in. You're almost halfway through your safety zone, and he's still on 40 milligrams . . . . You've got to act to get him off these steroids"; (3) "So had they done what they needed to do to protect David, he would have gone on these biologics in November. And . . . the earlier you go on and get off those -- and try to get off those steroids, . . . the quicker you can get down and get off and be safe and stay within the safety zone. And that's what's important, but that's what they didn't do. They didn't protect David, and David didn't know"; and (4) "David was on steroids for seven months continuously, more than double the safe time."

In any event, even if we agreed that Mr. Kaplan's counsel should not have made these "safety" and "protection" references, any prejudice from this argument was cured by the instruction that MedStar requested and the court delivered to the jury. After objecting to Mr. Kaplan's "safety" arguments, MedStar asked the court to instruct the jurors "that they are to rely on the jury instructions for what is the actual national standard of care." As noted above, the court seemed persuaded that Mr. Kaplan's argument was "inconsistent with the rules" and although it stated it "d[id]n't think [it] need[ed] to give a curative instruction," it determined that it *did* "need . . . to remind the jury that the standard of care is found in the jury instructions that I provided to them, and they . . . are bound by those instructions, particularly 9.02, 9.04," which was exactly what MedStar had asked it to do. The court subsequently instructed the jurors just as it had told counsel it would, informing them "[y]ou are only to consider the standard of care and the duty of care and how it's described in 9.02, 9.04, and the jury instructions as I instruct you." In fact, the court went one step further and added "so any argument that you hear that doesn't use those words, you are not to consider that as the law that I've instructed you on." MedStar never argued that this instruction was inadequate. In light of this record, we are unpersuaded that the trial court abused its discretion in addressing Mr. Kaplan's "safety" and "protection" arguments.

MedStar also claims that Mr. Kaplan's closing improperly "anchored" the jury to a specific figure, $4 million (the jury's aggregate damages award), justifying a curative instruction. MedStar points to Mr. Kaplan's counsel's argument, "[s]ome of you might think that [Mr. Kaplan's damages are] worth four million. Some of you might think [they're] worth three. Some might think [they're] worth six. It's completely up to you . . . ." On its face, this argument did not suggest that the jury make a specific damages award; rather it suggested a range of possible awards. The trial court concluded that offering the jury such a range is permissible under *District of Columbia v. Colston*, 468 A.2d 954, 957 (D.C. 1983), and we agree.

In *Colston*, the plaintiff had lost an eye and counsel asked the jury in closing: "[h]ow much is a healthy eye worth? You cannot restore his vision but you can compensate him for the loss. Is an eye worth five hundred thousand? Eight hundred thousand? A million? That is for you to say. That is for you to decide." *Id*. at 956. Reviewing this argument, this court acknowledged that it would have been "improper for counsel to suggest to the jury that it award a specified dollar amount." *Id*. at 957. But we also observed that "counsel must always be permitted to argue that his client's case is a serious one and to stress those aspects of the case that contribute to its seriousness," and we held that "[i]n this case, counsel's argument was not improper." *Id*. at 957-58. Subsequently, in *Hechinger Co. v. Johnson*, 761 A.2d 15, 22 (D.C. 2000), we clarified that we understood *Colston* to constitute

binding precedent allowing counsel to suggest a range of possible damages awards. In that case, counsel told the jury in closing, "I can't tell you what [my client's] injuries are worth. That's up to you to determine how much he is to receive. I can't tell you if it is a million dollars, if it is two million dollars, or if it is three million dollars. That is for you to decide." *Id.* at 22. We concluded that this line of argument was permitted under *Colston* because, just as in that case, counsel had not "asked the jury to award a specific dollar amount, and [had] told the jury that it was for them to decide the proper measure of damages." *Id.* The same is true here. Counsel for Mr. Kaplan did not ask the jury to award a specific amount and told the jurors that determining the amount of damages to award was "completely up to [them]."[5] Thus the trial court did not abuse its discretion when it denied MedStar's request to give a curative instruction.

## C. Remittitur

Lastly, MedStar argues that the jury's award of four million in damages to

---

[5] MedStar argues that we, as a division, are not bound by *Colston* and *Hechinger* because the court in these cases did not "squarely" address the psychological phenomenon of anchoring using a "range of specified damages figures," and that the same logic that supports barring counsel from suggesting one number should justify barring a range. Be that as it may, these cases make clear that suggesting a range of damages awards in closing is permitted while suggesting a specific number is not, and we as a division are bound by that precedent. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971).

Mr. Kaplan was excessive and that the trial court should have granted its post-trial motion to reduce the damages award. As with its argument that Mr. Kaplan improperly urged the jury to employ golden-rule-type reasoning in closing, *see supra* note 1, MedStar fails to engage with the trial court's reasoning denying its motion for remittitur. But even overlooking MedStar's deficient briefing and assessing for ourselves whether the trial court abused its discretion, *see Asal v. Mina*, 247 A.3d 260, 277 (D.C. 2021) (acknowledging we review a trial court's ruling denying remittitur only "for abuse of discretion"), we see no basis to call the trial court's ruling into question. The trial court correctly noted that "[t]he jury is afforded great weight in determining the appropriate measure of damages" and explained that a jury's verdict should only be overturned by the court if it "resulted from passion, prejudice, mistake, oversight, or consideration of improper elements or [is] beyond all reason or . . . so great as to shock the conscience." *District of Columbia v. Watkins*, 684 A.2d 396, 404 (D.C. 1996) (citation modified). The trial court also detailed the extensive testimony introduced at trial from Mr. Kaplan and his sister that shed light on "the impact [Mr. Kaplan's] injuries had on his physical capabilities and the emotional turmoil he suffered." Accordingly, we cannot say that the trial court's assessment that "the jury's award was []reasonable in light of the evidence and testimony presented" constituted an abuse of discretion.

\*          \*          \*

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*